SOLTERO LEÓN LEÓN ET AL., Appellant, *v.* REGISTRAR OF PROPERTY OF GUAYAMA, Respondent.

No. 940. Submitted December 21, 1934.—Decided January 16, 1935.

*C. Domínguez Rubio* for appellant. The registrar appeared by brief.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

This is an administrative appeal brought by the spouses Soltero León and Monserrate Rivas against the registrar of property of Guayama by reason of the refusal of this officer to record a mortgage deed because of the failure to pay fees others than presentation fees. The registrar returned said document, making no entry thereof, because of the failure to pay the record fees in accordance with Section 22 of the act of March 10, 1904, assigning salaries to the registrars of property.

The appellants claim that they are bound to pay no fees whatsoever with the exception of presentation fees which they did pay, because the instrument to be recorded embodies a mortgage loan with the Federal Land Bank which they maintain is exempted from State or local taxation by express provision of Section 26 of the Federal Farm Loan Act, approved by Congress on March 4, 1925, which, in its second clause, reads as follows:

"First mortgages executed to Federal land banks, or to joint stock land banks, and farm loan bonds issued under the prov'sions of this chapter, shall be deemed and held to be instrumentalities of the Government of the United States, and as such they and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation."

The only question in issue in this appeal is whether the fees required for the record of documents in the registries of property of Puerto Rico are in the nature of a tax or in the nature of a compensation paid by the interested party for the services he is given and for the benefits he obtains. The appellants argue that the fees required by the registrar are in the nature of a tax on the mortgage credit of the Federal Land Bank. The respondent maintains that said fees are not taxes but reasonable charge to meet the expenses of the institution. Both parties agree that the Federal Act exempts the Federal Land Bank from local taxation. Really, this is a question which admits no doubt as it is thus stated in the said act.

We are of opinion that a state or territory is not bound to establish and furnish the services of an institution like the registry of property free of charge. *Federal Land Bank* v. *Crossland*, 261 U. S. 374. The state or territory may charge a compensatory fee. This fee, if reasonable, can not be considered a tax from which the Federal Land Bank is exempted, because both the federal and the local agencies must contribute to compensate the services rendered. As

ably put by the registrar, the recording of instruments is a complementary function of the registries. The most important and meritorious work of the registries is the study and qualification by the registrars of the titles, the record of which depends on that fundamental function. A person who seeks to record real rights receives at the same time the benefits of that study, as a result of which, if the document is defective, he is notified thereof, and given an opportunity to cure the defects and to correct his title in order to receive the benefits and securities afforded by the record. In accordance with our recording system, the record of a title in the registry of property requires a detailed professional study of the title itself, of the complementary documents, and of the antecedents or history of the property in the registry. The registrar goes on saying that the fees are paid for all this work as a whole though they are fixed according to different scales in direct relation to the importance of the service.

The case of the *Federal Land Bank* v. *Crossland, supra,* construes an Alabama statute which imposes a tax on mortgages, of fifteen cents for each one hundred dollars of the principal sum secured. In that case the interested party paid to the registrar a fee to record the mortgage, but refused to pay the additional sum of fifteen cents for each one hundred dollars of the principal sum secured by the mortgage. In the opinion delivered by the Supreme Court of the United States the Alabama Statute is given as follows:

"The General Revenue Act of the State, approved September 15, 1919, by section 361, Schedule 71, (Acts 1919, p. 420) provides that no mortgage shall be received for record 'unless the following privilege or license taxes shall have been paid upon such instrument before the same shall be offered for record, to wit: . . . upon all instruments which shall be executed to secure an indebtedness of more than one hundred dollars there shall be paid the sum of fifteen cents for each one hundred dollars of such indebtedness, or fraction thereof, which is secured by sa'd mortgage . . . to be paid for by the lender,

and no such paper shall be received for record unless there is filed therewith a certificate that the privilege tax was paid by the lender.' Any probate judge who shall receive a mortgage without collecting the 'record'ng or registration tax' etc., is made guilty of a misdemeanor and punished.''

In construing the above statute, the Supreme Court expressed itself as follows:

''Of course the State is not bound to furnish its registry for nothing. It may charge a reasonable fee to meet the expenses of the institution. But in this case the Legislature has honesty d'stinguished between the fee and the additional requirement that it frankly recognizes as a tax. If it attempted to d'sguise the tax by confounding the two, the Courts would be called upon to consider how far the charge exceeded the requiremnt of supports as when an excessive charge is made for inspecting articles in interstate commerce. Foote v. Maryland, 232 U. S. 494. But it has made no such attempt. It has levied a general tax on mortgages, using the condition attached to registration as a practical mode of collecting it.''

In the instant case our statute establishes no difference between the fees required. It establishes a schedule of fees for the registries of property and provides the amount of the fees to be paid in said registries. The legislature of Alabama has distinguished between the fee and the additional requirement that it frankly recognizes as a tax. If it had joined them it would have been necessary to inquire how far the charge exceeded the reasonable standard set up by the Supreme Court of the United States.

The case of *Foote* v. *Maryland,* cited by said Court, gives the method to find out when should a charge be considered a fee and when a tax. In this case, the Court expressed itself as follows:

''Inspection necessarily involves expense and the power to fix the fee, to cover that expense, is left primarily to the legislature which must exercise discret'on in determining the amount to be charged, since it is impossible to tell exactly how much will be realized under the future operations of any law. Beside, receipts and d'sbursements may so vary from time to time that the surplus of one year may be

needed to supply the deficiency of another. If, therefore, the fees exceed cost by a sum not unreasonable, no question can arise as to the validity of the tax so far as the amount of the charge is concerned. And even if it appears that the sum collected is beyond what is needed for inspection expenses, the courts do not interfere, immediately on application, because of the presumption that the Legislature will reduce the fees to a proper sum. Red 'C' Oil Co. v. North Carolina, 222 U. S. 380, 393. But when the facts show that what was known to be an unnecessary amount has been levied, or that what has proved to be an unreasonable charge is continued, then, they are obliged to act in the light of those facts and to give effect to the provision of the Constitution prohibiting the collection by a State of more than is necessary for executing its inspection laws. In such inquiry they treat the fees fixed by the Leg'slature for inspection proper as *prima facie* reasonable and do not enter into any nice calculation as to the difference between cost and collection; nor will they declare the fees to be excessive unless it is made clearly to appear that they are obviously and largely beyond what is needed to pay for the inspection services rendered.''

We have said already that according to the federal statute the Federal Land Bank can not be subjected to a tax, but in the case of a fee, then the said institution is bound to pay a compensation for the services rendered. It is clear that it is impossible to balance exactly the receipts and the disbursements and that the most that can be expected is a reasonable approximation. It is absurd to expect the legislators to foretell the amount of the same with mathematical exactitude. Therefore, if these fees do not exceed the cost by an unreasonable sum, they must be considered as a fee and not as a tax. And the presumption that the fee is reasonable does not appear to have been destroyed. A careful study of the record shows that there are no grounds to rebut the presumption.

The decision appealed from must be affirmed.