Sotero León León y Monserrate Rivas, recurrentes, *v.* El Registrador de la Propiedad de Guayama, recurrido.

No. 940.—*Sometido:* Diciembre 21, 1934. *Resuelto:* Enero 16, 1935.

C. *Domínguez Rubio,* abogado de los recurrentes; el registrador recurrido, compareció por escrito.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

El presente es un recurso gubernativo establecido por los esposos Sotero León León y Monserrate Rivas contra el Registrador de la Propiedad de Guayama por haberse negado este funcionario a admitir para su inscripción un documento de hipoteca sin que se consignase otro derecho que el de presentación. El registrador devolvió el referido documento, sin tomar razón del mismo, por no consignarse los derechos arancelarios que devenga su inscripción de acuerdo con el artículo 22 de la Ley asignando sueldo a los registradores de la propiedad, de 10 de marzo de 1904.

Sostienen los recurrentes que no están obligados a satisfacer arancel alguno, excepto el de presentación que pagaron, por tratarse de una operación con el Federal Land Bank sobre un préstamo hipotecario que a su juicio está exenta de contribución estadual o local por disposición expresa del artículo 26 de *The Federal Farm Loan Act,* aprobado por el Congreso en 4 de marzo de 1925, que, en su inciso **segundo,** dice así:

"Las primeras hipotecas otorgadas a bancos federales de préstamos agrícolas o a sociedades anónimas bancarias de préstamos agrícolas, así como los bonos de préstamos agrícolas expedidos de conformidad con las disposiciones de esta ley, serán considerados y tenidos como instrumentos del Gobierno de los Estados Unidos, y como tales, ellos y los ingresos obtenidos de los mismos, estarán exentos de contribuciones federal, estadual, municipal y local."

La única cuestión envuelta en este recurso es si los derechos exigidos para la inscripción de documentos en los registros de la propiedad de Puerto Rico tienen el carácter de una contribución o constituyen más bien una compensación que satisface la parte interesada por los servicios que se le prestan y los beneficios que recibe. Arguyen los recurrentes que los aranceles exigidos por el registrador constituyen una contribución sobre el crédito hipotecario del Federal Land Bank. La parte recurrida entiende que dichos de-

rechos arancelarios son impuestos exigidos, no por vía de contribución, sino a título de resarcimiento de los egresos que ocasiona al estado el sostenimiento de la institución. Ambas partes están conformes en que la ley federal releva de pago de contribuciones locales al Federal Land Bank. En realidad, ésta es una cuestión que no admite dudas por estar consignada claramente en la referida ley.

■■■ Entendemos que un estado o territorio no está obligado a establecer y ofrecer los servicios de una organización como el registro de la propiedad sin recibir retribución alguna. *Federal Land Bank* v. *Crosland*, 261 U. S. 374. El estado o territorio puede cobrar por sus servicios un derecho (*fee*) compensatorio. Este derecho, si es razonable, no puede considerarse como una contribución que releve de pago al Federal Land Bank, porque tanto las agencias federales como las locales deben contribuir a compensar el servicio que se les presta. Como muy bien dice el registrador, la inscripción es una labor complementaria del funcionamiento del registro. Su función más importante y meritoria es el estudio y calificación que el registrador hace de los títulos, dependiendo la inscripción de esta labor fundamental. El que quiere inscribir un derecho real, recibe simultáneamente los beneficios de este estudio, como resultado del cual, si el documento es defectuoso, se pone al interesado sobre aviso y se le da una oportunidad para corregir los errores y perfeccionar su título a fin de que pueda recibir los beneficios y garantías que ofrece la inscripción. El despacho o inscripción de un título en el registro de la propiedad requiere y exige, dada la naturaleza de nuestro sistema registral, un estudio profesional detenido del título mismo, de los documentos complementarios y de los antecedentes o historia de los bienes en el registro. Los derechos, continúa el registrador, se pagan por esta labor englobada, si bien se gradúan por distintas escalas que están en relación directa con la importancia del servicio.

El caso de *Federal Land Bank* v. *Crosland,* supra, inter-

preta una ley del estado de Alabama donde se impone una contribución sobre hipotecas de 15 centavos por cada $100 del capital asegurado. En el caso citado la parte interesada satisfizo al registrador un derecho (*fee*) por registrar la hipoteca, resistiéndose a pagar la suma adicional de 15 centavos por cada $100 de la cantidad asegurada por la hipoteca. En la opinión emitida por la Corte Suprema de los Estados Unidos aparece la ley de Alabama descrita como sigue:

"La Ley General de Rentas Internas del estado, aprobada el 15 de septiembre de 1919, en su sección 361, *schedule* 71, (Leyes de 1919, p. 420) dispone que no se recibirá para su inscripción ninguna hipoteca 'a menos que el siguiente privilegio o impuesto de licencia (*license tax*) haya sido pagado sobre tal documento antes de ofrecerse el mismo para su inscripción, a saber: . . . en todos aquellos documentos otorgados para garantizar una deuda de más de $100, se pagará la suma de 15¢ por cada $100 de la deuda o fracción de los mismos, garantizados con hipoteca . . . suma que será pagada por el prestamista, y no se recibirá para su inscripción tal documento a menos que se archive con el mismo un certificado expresivo de que tal contribución (*privilege tax*) fué pagada por el prestamista.' Todo registrador que reciba una hipoteca sin cobrar el "impuesto de inscripción o anotación', etc., incurrirá en delito menos grave y será castigado de conformidad."

Interpretando la Corte Suprema el estatuto que antecede, se expresó en los siguientes términos:

"Desde luego, el Estado no está obligado a suministrar su registro gratuitamente. Tiene derecho a cargar una suma razonable para hacer frente a los gastos que dicha institución le acarrea. Pero en este caso la legislatura ha hecho una distinción honrada entre los derechos de arancel y el cargo adicional que reconoce francamente con el nombre de contribución. Si tratara de disfrazar la contribución confundiendo ambos impuestos, las cortes serían las llamadas a considerar hasta qué punto el cargo excedía lo requerido para su sostenimiento, como por ejemplo cuando se fija un impuesto excesivo por inspeccionar artículos de comercio interestadual. Foote v. Maryland, 232 U. S. 494. Pero no ha realizado tal tentativa. Ha impuesto *a general tax on mortgages,* usando la condición conectada con el Registro como un medio práctico de cobrarla."

En el presente caso nuestra ley no establece distinción alguna entre los derechos impuestos. Fija el arancel de registros de la propiedad y habla de los derechos que se han de satisfacer por las operaciones que se llevan a cabo en dichos registros. La Legislatura de Alabama establece cierta distinción entre el derecho (*fee*) y el pago de la suma adicional que francamente reconoce como una contribución. Si hubiese confundido ambas cosas habría sido necesario indagar hasta qué punto el pago exigido para la inscripción del documento rebasaba o dejaba de rebasar los límites de lo razonable en la forma aconsejada por el Tribunal Supremo de los Estados Unidos.

El caso de *Foote* v. *Maryland,* citado por. dicho tribunal, ofrece la pauta a seguir para averiguar cuándo un derecho debe considerarse como *fee* o como contribución. En este caso la corte se expresó así:

"El inspeccionar necesariamente envuelve gastos y el poder para fijar los derechos para cobrar dichos gastos se deja principalmente a la legislatura, la que debe ejercer discreción al determinar la suma que debe cargarse, toda vez que es imposible determinar exactamente cuánto se obtendrá en el futuro al ponerse la ley en vigor. Además los ingresos y egresos pueden variar en tal forma de tiempo en tiempo que el superávit de un año puede necesitarse para cubrir el déficit de otro. Por tanto, si los impuestos superan los gastos por una suma que no sea irrazonable no puede surgir cuestión alguna respecto a la validez del impuesto en lo que a la cuantía de la contribución se refiere. Y aun si aparece que la suma recaudada excede de la necesitada para los gastos de inspección, las cortes no intervendrán inmediatamente que se las solicita, porque la presunción es que la legislatura reducirá dichos impuestos adecuadamente. Red 'C' Oil Co. v. North Carolina, 222 U. S. 380, 393. Mas cuando los hechos demuestran que se ha impuesto una suma innecesaria o que lo que se ha demostrado ser un impuesto irrazonable continúa, entonces ellas están obligadas a actuar a la luz de esos hechos y a dar efecto a la disposición constitucional que prohibe que el Estado cobre más de lo necesario para poner en vigor sus leyes de inspección. Al apreciar tales casos ellas consideran los impuestos fijados por la legislatura para fines de inspección como razonables prima facie y no hacen un cálculo minucioso respecto a la diferencia existente entre los ingresos y egresos;

ni declararán que el impuesto es excesivo a menos que aparezca claramente que exceda obvia y considerablemente la suma requerida para pagar los servicios de inspección prestados.''

Ya hemos dicho que de acuerdo con el estatuto federal no puede compelerse al Federal Land Bank al pago de una contribución; pero si se trata de un derecho o *fee,* entonces la referida institución está obligada a satisfacer una compensación por los servicios que se le presten. Es claro que no pueden equilibrarse con exactitud los egresos y los ingresos, y que lo más que puede esperarse es una razonable aproximación. Sería absurdo pretender que los legisladores pudiesen predecir la cuantía de los mismos con exactitud matemática. De suerte que si estos aranceles o derechos no exceden del costo del sostenimiento del registro de una manera irrazonable, deben considerarse como *fees* y no como contribuciones. Y a nosotros no se nos ha demostrado que la presunción prima facie de la razonabilidad del derecho haya sido destruída. Un estudio detenido de los autos demuestra que en los mismos no hay base para rebatir la presunción.

*Debe confirmarse la nota recurrida.*